[S. F. No. 10340. In Bank.—December 19, 1923.]

RIVERSIDE PORTLAND CEMENT COMPANY, Respondent, v. MRS. G. W. TAFT et al., Appellants.

[1] REPLEVIN—ACTION ON BOND—REPLEVY OF ATTACHED PROPERTY—JUDGMENT AGAINST SURETIES—CREDIT FOR PROPERTY ATTACHED BUT NOT REPLEVIED.—Where all of attached property, except a sum of money, was replevied against by a third party, who was unsuccessful in the replevin suit, in a subsequent suit by the attachment creditor, who was successful in the attachment suit, against the sureties on the replevin bond, the sureties are entitled to have the sum of money attached but not replevied against credited upon the judgment obtained against them.

[2] ID.—RETURN OF ATTACHED PROPERTY—JUDGMENT AGAINST SURETIES—RIGHT TO CREDIT.—Where the attorneys for the attachment creditor were also attorneys for another party who held a judgment against the same judgment debtor, and they instructed the sheriff to first execute upon the latter judgment out of the property which was first attached and later replevied and then execute upon the judgment obtained in the replevin suit against the third party claimant, the sureties on the replevin bond, in an action against them by the attachment creditor, were entitled to have the judgment against them reduced to the extent of the value of the personal property taken in the replevin action and capable of identification and which was thereafter sold in satisfaction of the judgment which the sheriff was directed to first execute upon.

[3] Id.—Holder of Attachment Lien on Subsequently Replevied Property—Rights of.—The holder of an attachment lien on property which is subsequently replevied is entitled to have all of the attached property taken under the replevin bond returned, and if it cannot be returned, then to have a judgment for the value of the whole. If a portion be accepted the value thereof should be deducted from the judgment in favor of the attachment creditor, but the latter is not bound to accept a portion of the property.

[4] Id.—Possession.—Only the right of possession is involved in a replevin action.

[5] Id.—Effect of Giving Replevin Bond.—The giving of a replevin bond does not remove or obliterate the lien of an attachment; the effect of such a bond is simply to give the party the possession of the property pending the litigation.

APPEAL from a judgment of the Superior Court of Fresno County. C. E. Beaumont, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank Kauke and E. I. Feemster for Appellants.

A. W. Carlson and Fredericks & Hanna for Respondent.

SEAWELL, J.—This appeal is taken because of the refusal of the trial court to reduce the judgment obtained by respondent in an action against appellants as sureties on a claim and delivery bond given for the redelivery of certain personal property by applying a sum of money seized by respondent on attachment levied upon the personal property of respondent's debtor, but which sum of money was not claimed by the third party claimant and was not taken from the sheriff's possession in the replevin suit; and, further, because of the court's refusal or failure to apply the value of certain personal property actually taken possession of in said replevin suit and which was afterward applied, with the consent and by the direction of respondent, in satisfaction of a judgment obtained in a different action and for which no credit, offset, or recoupment was allowed appellants, as sureties, in the action against them.

Respondent obtained a judgment in the court below against Mrs. G. W. Taft, H. H. Backer, and A. H. Backer, sureties on a claim and delivery bond executed by them

with W. W. Taft as principal, in the sum of $7,929.15. The history of the case involves the proceedings of three other cases tried in the superior court of Fresno County. The chronological order of those cases is as follows:

John Grummett commenced an action against the Fresno Glazed Cement Pipe Company to recover the sum of $3,045.25. Judgment for that amount was rendered in his favor in said action on January 20, 1920. This will be referred to as the Grummett suit.

The Riverside Portland Cement Company (respondent herein) commenced its action against the Fresno Glazed Cement Pipe Company some time after the institution of the Grummett suit to recover the sum of $5,000 with interest. An attachment was issued therein and the sheriff of Fresno County, on April 12, 1917, levied on certain machinery, tools, appliances, and materials used in the manufacture of cement pipe and kindred products, a large amount of manufactured product, and also $990.92 in cash. W. W. Taft claimed ownership of all the attached property *except the $990.92*, gave a claim and delivery bond and took the property into his possession. On April 9, 1921, judgment in this action was rendered in favor of respondent and against the Fresno Glazed Cement Pipe Company for the sum of $5,000 with interest from April 20, 1917. This case will be referred to as the attachment suit.

W. W. Taft failed in his action as a third party claimant against Horace Thorwaldson, sheriff, and judgment went against him and the sureties on his claim and delivery bond for the sum of $7,929.15. This sum included the judgment in the attachment suit, to wit, $5,000 together with interest, plus damages and costs. This action will be referred to as the replevin suit.

The attorneys who represented Grummett in his suit against said common debtor, Fresno Glazed Cement Pipe Company, also represented the respondent in its attachment suit; the defendant sheriff in the replevin suit, and also the respondent in the instant case. This representation of said several parties by the same attorneys, the long delays, due in part to appeals and retrials in bringing any of said actions to a final determination, and the order in which executions were levied under instructions from the attorneys representing the respective parties, is responsible for a con-

fused situation. Although many months intervened between the entries of judgments in the Grummett suit and the replevin suit, respectively, executions thereon were issued and placed in the hands of the sheriff on the same day with the following written instructions signed by the attorneys who represented both of said judgment creditors: "Instructions to Sheriff: Under the execution in the case of *John Grummett* v. *Fresno Glazed Cement Pipe Company,* and the execution in the case of *W. W. Taft* v. *Horace Thorwaldson,* please levy upon the following described property, to first satisfy the execution in the case of *Grummett* v. *Fresno Glazed Cement Pipe Company* and after the satisfaction of that execution, levy upon the same property to satisfy the execution in the case of *Taft* v. *Thorwaldson* so far as it may be sufficient." A list of the property, describing the articles to be levied upon, was appended to the instructions. It included a number of the articles of machinery, appliances, and tools which had been taken over by Taft upon giving the claim and delivery bond. A number of the articles enumerated in said list were, in obedience to the instructions given in the Grummett and replevin suits, taken possession of by the sheriff and subsequently sold at execution sale, bringing $2,290, which amount was applied in part satisfaction of the Grummett judgment. Execution in the replevin suit was returned wholly unsatisfied. Plaintiff in the present case thereupon brought suit on the bond and recovered judgment for the amount of the judgment rendered in the attachment suit, to wit, $6,186.85. This sum, augmented by damages allowed by the court, aggregated $7,929.15. The last-named sum was the alternative amount fixed in case a delivery of the replevied property could not be made. In the suit prosecuted against the principal and sureties on the bond the court found that the defendants had not returned the personal property released to W. W. Taft, nor had said judgment or any part thereof been satisfied. It also found that the sum of $990.92 which had been levied upon as the property of the Fresno Glazed Cement Pipe Company in the attachment suit and which had never been released from said levy or claimed by any third party was not in any way "connected with the bond sued on in this action and was not affected by said suit." It also found that substantially all of the property

delivered to W. W. Taft by reason of the undertaking sued upon was sold, disposed of, and used up by him long prior to the recovery of the judgment against him for its return, and therefore it was impossible for the appellants to return to the sheriff the property replevied by said Taft.

We are satisfied that the findings of the court upon the two matters above specified are not sustained by the evidence. [1] As to the first proposition, appellants by their answer put in issue their right to have the $990.92 held by respondent by virtue of said writ of attachment applied as part satisfaction against appellants on the theory that respondent was entitled to recover from them the amount of the judgment recovered from the Fresno Glazed Cement Pipe Company, and no more. This undoubtedly was the measure of appellants' obligation to respondent. The $990.92 item was not and could not have been litigated in the replevin action. In the action against the sureties, however, it was proper for the court to consider the fact that respondent held under attachment said sum of $990.92, which could and should have been applied to appellants' debt. [2] As to the second proposition, the uncontradicted evidence as shown by the property lists is that a portion of the pipe-making machinery and appliances which was taken on execution in the Grummett case was practically the same property that was levied upon in the attachment suit and afterward replevied by Taft. From an examination of the property lists it is inferable that the property, including manufactured products, which was sold under the Grummett execution, was equal in value to the property levied upon in the attachment suit. It was not, however, identical in form and did not correspond numerically in manufactured product with the articles levied upon in the attachment suit and later taken over by Taft. It is the claim of appellants that when this property was taken on execution in the Grummett case under the instructions given by the attorneys who represented both Grummett and the Riverside Portland Cement Company it amounted to a return of and an acceptance by the latter of said attached property and exonerated the bond. It is urged that a contrary conclusion would require the appellant sureties to pay the judgment in the replevin suit without getting the property to compensate them for the judgment. This is

the precise thing which *Hunt* v. *Robinson,* 11 Cal. 262, holds cannot be done.

[3] The general rule in this state is well settled that the respondent was entitled to have all of the attached property taken under the replevin bond returned, and if it cannot be returned, then to have a judgment for the value of the whole. [4] Only the right of possession is involved in the replevin action. If a portion be accepted the value thereof should be deducted from the judgment. The respondent, however, is not bound to accept a portion of the property. (*Whetmore* v. *Rupe,* 65 Cal. 237 [3 Pac. 851]; *Burke* v. *Koch,* 75 Cal. 356 [17 Pac. 228]; *Metrovich* v. *Jovovich,* 58 Cal. 341.) If there was an acceptance, constructive or otherwise, of the property which was capable of identification by respondent it should not for this reason alone be held to have accepted property which was not in existence when the attachment was levied and consequently was never in the custody of the court.

Doubtless the attorneys in the instant case, acting in a dual capacity, were attempting to serve the interests of Grummett as well as the interests of the Riverside Portland Cement Company. No doubt the bond of Taft was regarded by them as sufficient to insure the satisfaction of the judgment in the attachment case. This unquestionably accounts for the instructions given by them to the sheriff to first levy the execution issued in the Grummett case and "after satisfaction of that execution to levy upon the same property to satisfy the execution in the case of *Taft* v. *Thorwaldson* so far as it may be sufficient."

No attempt was made to replevy the $990.92. The personal property taken under the replevin bond was and remained in the custody of the law by virtue of the lien of the attachment. [5] The giving of the replevin bond did not remove or obliterate the lien of the attachment. The doctrine early announced in the case of *Hunt* v. *Robinson, supra,* and which has remained unchallenged, is to the effect that a replevin bond gives to the party merely the possession of the property pending the litigation. The effect of such a bond under our statute is not to divest either the title or the lien (attachment or execution) of the other party. The contest is about specific personal property. The recovery of the thing itself and not damages in lieu

thereof is the primary object of the suit. The value is recoverable only as an alternative when delivery of the specific property cannot be had. The effect of the replevin bond is simply to give the party the possession of the property pending the litigation.

"It is certain that the unsuccessful party may deliver the property and discharge himself from so much of the judgment as is made up by the assessed value. The very reason why he may do this, is because the suit is about that specific property, and because the title is not affected by the replevin bond. But where property attached is released upon the bond of the defendant he cannot discharge himself, or his sureties, by a delivery to the sheriff of the same property, for the reason that the lien is gone. In the case of *Nickersen* v. *Chatterton*, 7 Cal. 568, we held that 'when the plaintiff or defendant in the original suit obtains judgment for the delivery of the property or if it cannot be found, then for its value, the title in the property vests in the party against whom the judgment is given, subject to the right of the successful party, to take it in discharge of so much of the judgment as is made up by the assessed value of the property. . . .

"The claimant and his sureties, who have stipulated for the return of the property, would then be left to pay the judgment in the replevin suit, while, at the same time, they would not get the property to compensate them for the judgment. This would certainly place the claimant of property seized by an officer in a worse condition than that of an ordinary trespasser. When A takes the property of B, and the latter obtains judgment for the value of the property, if A pays the judgment he is entitled to the property. The law gives him the property for the judgment. But if the theory of the plaintiff be true, the unfortunate claimant must pay the judgment, and still lose the property. In claiming the property he assumes a double responsibility; while the defendant in the attachment or execution may be fortunate enough to obtain double the value of the property seized by the officer. In reference to such a theory Mr. Justice McLean, in the case of *Hagan* v. *Lucas* (10 Pet. 400 [9 L. Ed. 397, see, also, Rose's U. S. Notes]), already referred to, makes these forcible remarks:

" 'If the property be liable to execution, a levy must always produce a forfeiture of the condition of the bond; for a levy takes the property out of the possession of the claimant, and renders the performance of this bond impossible. Can a result so repugnant to equity and propriety as this be sustained? Is the law so inconsistent as to authorize the means by which the discharge of a legal obligation is defeated, and at the same time exact a penalty for the forfeiture? This would indeed be a reproach to the law and to justice.'

"But the theory that the possession obtained by virtue of the writ of replevin is only temporary, and does not divest the title or discharge the lien, is the most logical, and at the same time, the most just to all parties. The party ultimately entitled to the property has a double security; while the party who replevies it does not incur the extraordinary risk of having to pay the judgment and also to lose the property. And the defendant, in the attachment or execution, has no opportunity to obtain two prices for his property.

"If these views be correct, the lien of the attachment continued, and when the same property came again into the hands of the sheriff, the condition of the replevin bond, to return the property, was fulfilled. The property was then liable to a second levy, but such second levy was subject to the levy under the prior attachment." (*Hunt* v. *Robinson, supra.*)

The $990.92 seized in the attachment suit has been held undisturbed and is still held unclaimed by any other party litigant. It has never been discharged from the attachment lien. No one has disputed the right of respondent to have that amount applied to its judgment in the attachment suit. Such an application would reduce the judgment of respondent against the sureties to that extent. The sureties possess every right that Taft had. They are entitled to a recoupment to the extent of the sum of money held by respondent and which it should apply in partial satisfaction of its judgment against the Fresno Glazed Cement Pipe Company. Under the authority last cited the sureties were certainly entitled to all other personal property subject to identification or its value which they obligated themselves to make good.

Respondent undoubtedly knew that a portion, at least, of the property described in the instructions to the sheriff was the identical property that had been attached and replevied by Taft. Extensive lists were made of all the property attached and afterward taken over by Taft in the replevin action.

Respondent consented that the personal property which had been relinquished by Taft should first be applied to the extinguishment of the Grummett judgment. This act was an assumption of authority over said property. It thereby directed that any claim it had against said property as growing out of the attachment lien or arising from any source be made secondary to the Grummett execution. Respondent at least became an intermeddler in a way that diverted the property from the control or possession of the sureties who owed Grummett no obligation and who had a right to the property if compelled to pay the debt owing by the Fresno Glazed Cement Pipe Company to respondent.

We are of the opinion that the judgment of respondent should be reduced by allowing as credits the following: the $990.92 held by virtue of respondent's attachment lien; also the value of the personal property taken in the replevin action and capable of identification and which was thereafter sold in satisfaction of the Grummett judgment.

For the foregoing reasons the judgment is reversed.

Richards, J., *pro tem.*, Lawlor, J., Lennon, J., Myers, J., and Wilbur, C. J., concurred.