[Civ. No. 17637. First Dist., Div. Two. Jan. 20, 1958.]

BRUCE MONTGOMERY et al., Respondents, v. HENRY GRATTAN, Appellant.

Costello & Johnson for Appellant.

Timothy A. O'Connor for Respondents.

KAUFMAN, P. J.—On December 9, 1954, the United Machinery Engineering Corporation, a machine shop operated by Sam Saso and Clarence Tindall, executed a chattel mortgage to secure the payment of a promissory note for $16,803.20

three years from date with interest of 6 per cent per annum to the plaintiffs. The mortgage was duly recorded on December 16, 1954. The plaintiffs also became the owners of some of the other machinery of the corporation by virtue of a bill of sale dated April 20, 1955. United Machinery was the tenant of two buildings on the premises owned by the defendant at 965 Chestnut Street in San Jose. On about April 20, 1955, United Machinery in default under the chattel mortgage and owing past due rent, ceased operations. The defendant instituted a suit for back rent against the president of the corporation, Sam Saso, and attempted to attach the machinery remaining on the premises. While the attachment proceeding was pending, the defendant, upon hearing from his neighbors that Sam Saso was carrying away machinery by the truckload, replaced the lock of the building with a lock of his own, thus excluding all others from the premises. The property was never attached by the defendant. On April 22, 1955, the plaintiffs gave notice that pursuant to the terms of the mortgage, they took possession of the property described in the mortgage. On May 7, 1955, the plaintiffs gave notice of intention to sell the property subject to the mortgage on May 16, 1955.

The defendant continued in the possession of the machinery until October 11, 1955, when the sheriff replevied all of the machinery owned by the plaintiffs on the defendant's premises. At the time of the replevin, some of the machinery listed in the chattel mortgage and the bill of sale could not be accounted for. This missing machinery is the subject of this action brought by the plaintiffs. The complaint stated three causes of action : claim and delivery for the missing machinery or the value thereof; conversion for the rental value of the machinery; and damages for the negligent handling of the machinery. Upon trial of the action, the court after making findings of fact entered a judgment for the plaintiffs on the first two causes of action in the sum of $2,392. From that judgment the defendant appeals, contending that:

1. A landlord in possession of a tenant's property is not absolutely liable for any loss of the property.

2. A landlord who takes possession of personal property for the purpose of safekeeping, pending the resolution of conflicting claims, is not liable as a converter.

3. There is insufficient evidence to support the finding that the defendant was in possession of the property not accounted for.

4. There is insufficient evidence to support the finding that the reasonable rental value of the premises was $400.

To support his first contention the defendant argues that claim and delivery is not an appropriate remedy here and that the plaintiffs have failed to plead or prove negligence or conversion on the part of the defendant. Defendant relies on *Fay Fruit Co.* v. *Ryan,* 68 Cal.App. 304 [229 P. 62], and argues that the facts of this case are analogous to a pledge and that he is in possession of the goods as security for a debt. There is no evidence to support the latter contention.

The purpose of the action of claim and delivery is to enforce the plaintiff's right to possession of chattels against a defendant who unlawfully detains them. (*Normart* v. *Safer,* 67 Cal.App. 507 [227 P. 943].) The issue is whether or not the plaintiff is entitled to the possession of the property. (*Riverside Portland Cement Co.* v. *Taft,* 192 Cal. 643 [221 P. 357].) As stated in *Commercial & Sav. Bank* v. *Foster,* 210 Cal. 76, at 79 and 80 [290 P. 583], "All that need be pleaded is the ultimate fact of the [plaintiff's] right to possession—the source of the asserted right need not be pleaded. [Citing cases.]

"The law is well settled in this state that a chattel mortgagee under a mortgage conferring a right of possession, upon default may, after default, recover possession of the mortgaged chattel in a replevin action. [Citing cases.]" Here the plaintiff was the owner of the property under a chattel mortgage, which after the default gave him the right to possession and when duly recorded served as notice to all the world. A chattel mortgagee under a mortgage conferring a right of possession upon default may recover possession of the property from a third party who has taken the property with notice of the mortgage. (*Stringer* v. *Davis,* 35 Cal. 25; *Berson* v. *Nunan,* 63 Cal. 550; *Bank of Woodland* v. *Duncan,* 117 Cal. 412 [49 P. 414]; *Rohrbough* v. *Johnson,* 107 Cal. 144 [40 P. 37].)

Defendant relies on *Fay Fruit Co.* v. *Ryan, supra,* 68 Cal. App. 304, and further contends that the facts of this case are analogous to a pledge and that he is in possession of the goods as security for a debt. There is no evidence to support the latter contention. In *Fay Fruit Co.* v. *Ryan,* cited by the defendant, the defendants were the owners of an orange grove on which there was a crop of oranges nearing maturity. The plaintiff pledgee in that case loaned the defendants a sum of money on the security of the crop and obtained possession of

the crop for the purposes of marketing. A part of the crop disappeared while under the control of the pledgee who refused to allow the defendants credit for this portion. The holding of the court that the plaintiff was liable for the value of the missing part of the crop and had the burden of proving lack of negligence would appear to us to support the position of the plaintiffs here, rather than the defendant. In the instant case there was testimony that when the defendant put his lock on the building the missing property was there. Six months later, in October, when this action was filed, the sheriff did not find the property in the building.

Defendant next contends that he as a landlord is not liable as a converter of the property as he took possession of the property for the purpose of safeguarding conflicting interests. As there is no evidence in the record that the plaintiffs assumed any obligations of the tenants to the defendant, the fatal flaw in this argument is that defendant's relationship to the plaintiffs here is not that of a landlord. Furthermore, the defendant here admitted that he took possession of the property. His testimony is as follows:

"Q. Isn't that true? A. I don't know whether I had an attachment or not. I thought I did.

"Q. And as I understand you, Mr. Grattan, you are now testifying that you thought you had an attachment on the property and you decided whether the property, the equipment, was to be taken in or out of the building because you were deciding that you had an attachment on it, isn't that right? A. Certain machinery.

"Q. Did you call the Sheriff's Office when anybody came there to take any equipment? A. Well, it was agreed by the parties concerned when we let anything out.

"Q. In other words, they couldn't take anything out unless you let them take it out, isn't that right? A. That's right.

"Q. And you would decide what they would take out? A. Yes. When the telephone company come, I let them take their telephone out.

"Q. Now, Mr. Grattan, I also understand you to say that you moved some equipment from one building to another building, is that right, or from one part of your building out there to another part, is that right? A. That's right.

"Q. Now, with reference to where you moved the property to, the equipment to, was that leased to the United Machinery, the place where you moved the equipment to? A. No.

"Q. Well, Mr. Grattan, by virtue of what authority did you

move any of that equipment? A. That they failed to pay any rent on it.

"Q. And so you moved it? A. Yes. I notified them and then when—the third time, I figured if they wasn't to move it, I could move it.

"Q. And how did you notify them? A. By word and by telephone."

The above would appear to support plaintiffs' contention that the defendant refused to permit them to take all of the equipment out of the building. ■ Defendant next erroneously contends that there is insufficient evidence to support the finding that he was in possession of the missing property. There is evidence that indicates the property was in the building at the time the lock was put on the door, and that it was not present at a later date, that the defendant had access to the building and placed his own lock thereon. Some of the evidence on this matter as on others was conflicting, but that was a matter properly resolved by the trial court.

Defendant's final contention is that there is insufficient evidence to support the finding that the reasonable rental value of the machinery was $400. The testimony is conflicting on this point and it was for the trial court to resolve the conflict.

No prejudicial error appearing in the record before us the judgment must be affirmed.

Judgment affirmed.

Dooling, J., and Draper, J., concurred.